**CONTINENTAL CASUALTY COMPANY
and Tanita Farms, Inc., Petitioners,**

v.

**The INDUSTRIAL COMMISSION of
Arizona, Respondent,
Gabriel Guerrero, Respondent Employee.**

**No. 1 CA–IC 1113.**

Court of Appeals of Arizona,
Division 1,
Department C.

June 10, 1975.

Rehearing Denied July 9, 1975.
Review Granted Sept. 18, 1975.

Spencer K. Johnston, Phoenix, for petitioners.

Greg L. Folger, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Harlan J. Crossman, Phoenix, for respondent employee.

OPINION

STEVENS, Judge.

This opinion is limited to a very precise question: After the claimant sustained a compensable industrial injury, the claim therefor having been accepted with compensation and medical treatments being assumed by the carrier without a contest, the claimant was indicted for a federal felony, convicted after a jury trial and sentenced. He was sent to the Federal Correctional Institution at La Tuna, Texas. At the time of his departure for Texas the claimant was in need of continuing medical treatment and his condition was not yet stationary. Prior to the time of his departure for Texas the claimant neither sought nor secured the permission of The Industrial Commission. The question is whether these facts, without more, entitle the carrier to suspend all compensation benefits. We hold that the answer is in the negative.

On 28 August 1971, Gabriel Guerrero (claimant), a forty-four year old man with three dependents sustained an industrially related accident. The initial medical report recites "fractured right tibia and fibula * * * hospitalization and surgery—no work status." Without contest, the Continental Casualty Company (carrier) accepted the claim. Thus, the Commission file has no Arizona medical reports except the initial report quoted above.

In mid-1972 the claimant was indicted for felony violations of federal statutes.

The jury trial thereof resulted in verdicts of guilty on 24 November 1972, at which time the claimant was placed in federal custody in Arizona. On 3 January 1973 his sentence was pronounced which included two concurrent 30-month periods of confinement. He was transferred to La Tuna, Texas on 10 January 1973. He was still in need of medical treatment, in fact he was taken to the office of his treating physician at least once between his 24 November 1972 confinement in Arizona and his 10 January 1973 departure for Texas. He neither sought nor secured the permission of the Commission to leave the State of Arizona. A.R.S. § 23–1071 provides as follows:

"No employee may leave the state of Arizona or the locality in which he is receiving treatment while the necessity of having medical treatment continues, without the written approval of the commission. Any employee leaving the state of Arizona or the locality in which he is receiving medical treatment without such approval will forfeit his right to compensation during such time, as well as his right to reimbursement for. his medical expenses, and any aggravation of his disability, by reason of the violation of this section, will not be compensated."

Under date of 29 March 1973 the carrier issued its notice of claim status reciting, in part:

"All compensation benefits suspended effective 02/27–73 because claimant:

"1. Left the state of Arizona without the written approval of the Industrial Commission of Arizona

*   *   *   *   *   *

"5. Other: Applicant is in need of active medical treatment and the insurance carrier does not consent to or approve of the applicant leaving the State of Arizona while in need of medical treatment."

There was a timely request for a hearing. The claimant could not be present. The hearing was commenced on 15 August 1973 which, by reason of the illness of Mrs.

Guerrero, was recessed to 13 September 1973. In the meantime, the carrier issued a second notice of claim status dated 17 August 1973 attaching thereto a document appearing to be a record of medical care of the claimant during the early part of his confinement in Texas. The notice of claim status recites in part:

"5. Amount of compensation changed to 65% of the difference between average monthly wage before injury or exposure and the wage applicant is able to earn after date of release for work, effective 02/01/73.

*   *   *   *   *   *

"10. Other: These benefits suspended effective February 1, 1973 because applicant has removed himself from the labor market and has no opportunity to seek and secure employment."

There was a timely request for a hearing addressed to the August notice of claim status.

On 13 September 1973, over the hearsay objection of the carrier, Mrs. Guerrero testified that she had seen the claimant in April 1973, after his removal to Texas and during his confinement there. She related conversations with him, in part:

"A. Yes. He said that they put him to work in the kitchen and his leg got swollen and he complained to the authorities there and they took him down to see the doctor, and the doctor give them orders not to put him to work because of his leg.

"Q. Did he tell you when that was? Was it in February or March?

"A. It was in February, I think.

*   *   *   *   *   *

"Q. BY MR. CROSSMAN [Attorney for the claimant]: Did he tell you anything about needing further surgery?

"A. Yes. They told him there that he could get operated again, but they were going to send him to St. Louis, Missouri, to be operated there. And he told them that he didn't want to go over there be-

cause it was too far, that he would rather be operated here in Arizona.

"Q. The physicians told him that he needed another operation?

"A. Yes.

"Q. Did your husband tell you that he was still having trouble with his leg?

"A. Um hum."

The hearing officer rendered his initial decision and award on 5 October 1973. This was followed by the carrier's request for a review and memoranda by opposing counsel. The hearing officer rendered his decision on review on 3 January 1974 affirming and supplementing his 5 October 1973 decision and award. The claim was brought to this Court by the statutory writ of certiorari.

The hearing officer's very careful analysis of this perplexing problem is reflected in his two decisions referred to above. The hearing officer declined to consider the August 1973 notice of claim status and limited his decision to the issues raised by the March 1973 notice of claim status. He assumed that compensation had been paid to 26 February 1973, the cutoff date specified in the March 1973 notice of claim status. The hearing officer's award directed the resumption of compensation payments as of 27 February 1973. He did not rule out that there may be other grounds upon which the carrier might seek relief.

In Sorenson v. Six Companies, Inc., 53 Ariz. 83, 85 P.2d 980 (1939), our Supreme Court stated:

"* * * the purpose to be accomplished by the compensation act is to provide for the injured employee, and those dependent upon him, a certain amount of compensation which is supposed to represent, in part at least, the wages which he would presumably have earned had he not been injured." 53 Ariz. at 90, 85 P.2d at 983.

The hearing officer reviewed the "claimant-prisoner" cases of Watson v. Industrial Commission of Arizona, 100 Ariz. 327, 414 P.2d 144 (1966); Johnson v. Industrial Commission of Arizona, 88 Ariz. 354, 356 P.2d 1021 (1960); Vaughn v. Industrial Commission of Arizona, 13 Ariz.App. 532, 478 P.2d 530 (1971), and Bearden v. Industrial Commission of Arizona, 14 Ariz. App. 336, 483 P.2d 568 (1971). He concluded that Bearden, supra, was the most closely in point, observing that in Bearden there was confinement in Arizona and in the instant case the confinement is outside of Arizona. He recognized and this Court recognizes that out-of-state confinement creates many difficult problems for both the claimant and the carrier. Consideration was also given to Frantz v. Industrial Commission of Arizona, 21 Ariz.App. 73, 515 P.2d 898 (1973).

In Bearden, supra, (review denied by Arizona Supreme Court) this Court stated that incarceration after a compensable industrial injury, in and of itself, does not give a proper legal basis to terminate or to suspend the claimant's entitlement to compensation and to medical treatment.

In Frantz, supra, (a review by the Arizona Supreme Court was not requested) this Court held that a departure from the State of Arizona without permission of the Commission forfeits the claimant's right to compensation and to medical benefits while absent. It has been urged in this case that this Court determine whether the claimant's departure was "voluntary" or "involuntary." This we decline to do as A.R.S. § 23–1071, quoted above, recites that the departure of a claimant from Arizona creates an absolute forfeiture. Such a forfeiture does not turn upon whether the departure was voluntary or involuntary.

How then does this Court reconcile the apparent conflict between Bearden, supra, and Frantz, supra?

Since Sorenson, supra, holds that compensation is for the benefit of not only the injured workman but also his family, the departure of the claimant from Arizona under these circumstances calls for the uniform treatment of incarcerated claimants. As pointed out by the hearing officer, there may be other remedies available

to the carrier to suspend the payments to which the claimant would otherwise be entitled.

The award being very limited in its scope,

The award is affirmed.

NELSON, P. J., Department C, concurs.

WREN, Judge (dissenting).

I do not agree. ·I feel that this case is controlled by A.R.S. § 23–1071, and the rationale of Frantz, *supra*. The sanctions of the statute should not be aborted by the voluntary commission of a criminal act which results in out-of-state incarceration.